# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TIFFANY CROWNOVER, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, a Minnesota corporation<br><br>　　　　　Defendant. | **Case No.: 0:25-cv-03308**<br><br>**COMPLAINT – CLASS ACTION**<br><br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiff Tiffany Crownover ("Plaintiff") brings this class action on behalf of herself and all others similarly situated against Allianz Life Insurance Company of North America ("Defendant" or "Allianz") arising from a massive data breach publicly disclosed on July 25, 2025 (the "Data Breach" or "Breach").[1]

1.　　The Breach resulted in the unauthorized access and exfiltration of highly sensitive personally identifiable information ("PII") and, in some cases, protected health information ("PHI") of approximately 1.4 million individuals, including customers, financial professionals, and employees across the United States. This Private Information

---

[1]　　Associated Press, "Allianz Life confirms data breach affecting majority of 1.4M US customers" (July 26, 2025).

included names, Social Security numbers, dates of birth, addresses, contact details,

insurance policy information, and possibly other sensitive financial data.[2]

2.      The compromise occurred through unauthorized access to a third-party,

cloud-based customer relationship management ("CRM") system used by Defendant. The

intruder, employing a social engineering scheme, posed as IT helpdesk staff to convince

employees to provide access credentials, which enabled the transfer of bulk customer

data from the CRM platform.[3]  Defendant stored this data in unencrypted, Internet-

accessible form, despite having knowledge of heightened cybersecurity risks facing

financial and insurance institutions.[4]

3.      Defendant discovered the intrusion on July 17, 2025, but did not publicly

disclose the incident until July 26, 2025 and waited until August 1, 2025, to begin direct

notification to affected individuals.[5]  This delay deprived Plaintiff and Class Members of

the opportunity to take immediate protective measures to mitigate potential harm.

4.      The exposed information has significant value on illicit markets,

particularly on the dark web, where it can be used to commit identity theft, open

---

[2]      Sara Chernikoff, USA TODAY, "A majority of customers' personal information
stolen in data breach at Allianz Life" (July 28, 2025); Steven Weisman, Forbes, "Allianz
Data Breach Exposes Vulnerabilities Affecting Everyone" (Aug. 10, 2025).
[3]      Steven Weisman, Forbes, "Allianz Data Breach Exposes Vulnerabilities Affecting
Everyone" (Aug. 10, 2025); Lawrence Abrams, BleepingComputer, "ShinyHunters
behind Salesforce data theft attacks at Qantas, Allianz Life, and LVMH" (July 30, 2025).
[4]      Allianz Global Corporate & Specialty, "Companies need to strengthen cyber
controls to counter ransomware pandemic" (Oct. 13, 2021).
[5]      Kurt Knutsson, Yahoo! Tech, "Allianz Life Insurance data breach exposes 1.4
million Americans" (Aug. 10, 2025); Associated Press (July 26, 2025), supra n.1; Office
of the Maine Attorney General, Data Breach Notification (posted July 2025).

fraudulent accounts, obtain loans, file false tax returns, secure government benefits, or facilitate medical and financial fraud.[6]  Unlike credit or debit card data, which can be canceled or replaced, Social Security numbers and other permanent identifiers cannot be easily changed.[7]  The risk of misuse remains for years or even decades after the initial compromise.[8]

5.      As a direct and foreseeable result of Defendant's conduct, Plaintiff and Class Members face a heightened and continuing risk of identity theft and fraud, have suffered loss of privacy, have spent and will continue to spend time and money on mitigation efforts, and have experienced diminution in the value of their Private Information. Plaintiff seeks damages, restitution, and injunctive relief to remedy Defendant's unlawful conduct and prevent future harm.

## PARTIES

6.      Plaintiff Tiffany Crownover is a natural person and citizen of California who, during the relevant period, was a customer of Defendant. As a condition of receiving Defendant's services, Plaintiff provided her Private Information to Defendant. Plaintiff has received written notification that her Private Information was compromised in the Data Breach. She has spent considerable time monitoring her accounts, reviewing

---

[6]      DigitalTrends, "Your Personal Data Is for Sale on the Dark Web. Here's How Much It Costs" (Oct. 16, 2019).

[7]      Social Security Administration, "Identity Theft and Your Social Security Number" (Oct. 2024).

[8]      U.S. Government Accountability Office, "Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown" (June 2007).

her credit reports, and researching the Data Breach to understand the risks. She remains at ongoing risk of identity theft and fraud.

7.    Defendant Allianz Life Insurance Company of North America is a Minnesota corporation with its principal place of business located at 5701 Golden Hills Drive, Minneapolis, Minnesota 55416. Defendant markets itself as a leading provider of financial and retirement solutions, including life insurance and annuity products, and collects, stores, and uses extensive sensitive personal data from its customers, financial professionals, and employees throughout the United States.[9]

## FACTUAL ALLEGATIONS

### A.    Background on Defendant's Operations and Data Practices

8.    Defendant describes its mission as "securing your future" through financial and retirement solutions, aiming to win the "hearts of customers" by delivering products and services that provide confidence about what lies ahead.[10] Defendant serves approximately 1.4 million U.S. customers and employs nearly 2,000 people nationwide.[11]

9.    To obtain and maintain services from Defendant, Plaintiff and Class Members were required to provide sensitive PII and, in some cases, PHI, including full names, addresses, dates of birth, Social Security numbers, contact details, and insurance policy information. Defendant stored this data electronically, including on systems

---

[9]    Allianz Life, "About Allianz" page (last visited Aug. 15, 2025)
[10]    *Id.*
[11]    USA TODAY (July 28, 2025), supra n.2.

maintained by third-party service providers, and expressly represented in its Privacy Policy that it would safeguard such data.[12]

10.    Defendant knew or should have known that the sensitive nature of the information it collected and maintained made it an attractive target for cybercriminals, and that a breach of such information would foreseeably result in substantial harm to affected individuals.

**B.    The July 2025 Data Breach**

11.    On or about July 16, 2025, a malicious actor gained unauthorized access to Defendant's Salesforce-based CRM system through a social engineering scheme in which the actor posed as IT helpdesk personnel and persuaded employees to grant access.[13] This access enabled the actor to exfiltrate bulk customer data containing highly sensitive PII and PHI.

12.    On July 17, 2025, Defendant detected the unauthorized access and initiated an investigation, which included notifying the FBI.[13] According to Defendant, there was "no evidence" that its core network or policy administration system was accessed; however, the CRM data contained the personal information of the majority of Defendant's customers, financial professionals, and some employees.[14]

13.    Despite discovering the breach on July 17, 2025, Defendant did not notify the public until July 26, 2025, and did not begin sending direct notifications to affected

---

[12]    Allianz Life, "Privacy Policy" (last visited Aug. 12, 2025).
[13]    Forbes (Aug. 10, 2025) and BleepingComputer (July 30, 2025), supra n.3.
[14]    Yahoo! Tech (Aug. 10, 2025), supra n.5.

individuals until August 1, 2025.[14] In its notice to the Maine Attorney General,

Defendant confirmed that the incident compromised individuals' names and other

personal identifiers, with some records also containing additional sensitive data.[15]

## C.    The Value of the Compromised Information

14.    PII and PHI have significant value on the dark web, fetching as much as

$363 per record.[16]  Stolen PII is frequently trafficked on the dark web, which is heavily

encrypted and difficult for law enforcement to police.[17]  Criminals use such data to open

fraudulent accounts, obtain loans, commit tax fraud, receive medical services under a

victim's name, and even provide false information to law enforcement.[18] Once posted for

sale, stolen data may be used for years, and studies have shown that data from breaches

may be held for extended periods before being misused.[19]

## D.    Defendant's Failure to Adequately Protect Data

15.    Defendant failed to implement reasonable security measures to prevent the

Data Breach, such as encrypting sensitive data at rest, segmenting networks to prevent

lateral movement, and maintaining robust employee training to prevent social

engineering attacks. The Federal Trade Commission ("FTC") has issued guidance

outlining reasonable security practices, including limiting data retention, restricting

---

[15]    Associated Press (July 26, 2025) and Maine AG notice (July 2025), supra n.1, n.5.
[16]    Ashiq Ja, "Hackers Selling Healthcare Data in the Black Market," Infosec (July 27, 2015).
[17]    IdentityForce, "Shining a Light on the Dark Web with Identity Monitoring" (Dec. 28, 2020).
[18]    FTC Consumer Advice, "What To Know About Identity Theft" (Sept. 2024).
[19]    GAO (June 2007), supra n.8.

access to sensitive data, using encryption, monitoring for suspicious activity, and promptly notifying individuals of breaches.[20] [21]

16.    Defendant did not adhere to these principles and failed to act on its own awareness of increasing cyber threats to the insurance industry, including warnings it had issued to other companies about the need to strengthen cyber controls against ransomware and related attacks. Defendant's inadequate safeguards and delayed notice to victims fell below industry standards and violated its duties to Plaintiff and Class Members.[22]

**E.    Defendant's Failure to Timely Notify Affected Individuals**

17.    Immediate notice of a data breach is critical so that those impacted can take measures to protect themselves, such as changing passwords, placing fraud alerts, or freezing credit files. The FTC advises companies to have an intrusion detection system in place to expose breaches quickly and a rapid response plan that includes prompt consumer notification.[23]

18.    Here, Defendant waited more than a week after detecting the breach to make a public disclosure, and nearly two weeks to begin sending written notices to affected individuals. This delay increased the likelihood that Plaintiff and Class

---

[20]    FTC, "Start with Security – A Guide for Business" (2015).
[21]    FTC, "Protecting Personal Information: A Guide for Business" (last visited Aug. 12, 2025).

[22]    Allianz GC&S (Oct. 13, 2021), supra n.4.
[23]    FTC, "Protecting Personal Information: A Guide for Business" (last visited Aug. 12, 2025), supra n.22.

Members' stolen Private Information could be misused before they were even aware of the compromise.

**F.   The Harm Caused by the Data Breach**

19.   Plaintiff and Class Members have suffered actual, present, and imminent injuries as a result of the Data Breach, including but not limited to:

(a) theft of their Private Information;

(b) loss of control over their Private Information and its use;

(c) the present and ongoing risk of identity theft and fraud;

(d) costs associated with prevention, detection, and recovery from identity theft and fraud, such as credit monitoring, credit freezes, and professional services;

(e) time lost monitoring accounts, disputing fraudulent charges, and mitigating damage

(f) diminution in the value of their Private Information;

(g) emotional distress, anxiety, and loss of privacy;

(h) an increase in spam calls, phishing attempts, and other unwanted contacts following the Breach.

20.   Stolen Private Information can be used in a variety of criminal ways. The FTC warns that identity thieves may use stolen information to open new utility accounts, drain bank accounts, run up charges on credit cards, or obtain medical treatment on a

victim's health insurance.[24]  The Social Security Administration cautions that loss of a Social Security number can lead to long-term identity theft and financial fraud, and that replacing such a number is difficult and often ineffective because credit bureaus and banks can link new numbers to old records.[25]

21.    The U.S. Government Accountability Office has reported that in some cases stolen data may be held for a year or more before being used, and once sold or posted online, fraudulent use may continue for years.[26]  An NPR report—citing the Identity Theft Resource Center—explains that credit bureaus and banks may quickly link any newly issued Social Security number to the old number, thereby transferring old negative information to the new record.[27]

22.    Plaintiff and Class Members also face increased targeting for phishing and other scams because criminals can use accurate personal details to craft convincing fraudulent messages or calls. These risks require constant vigilance and ongoing expenditure of time and money.

**G.    Defendant's Conduct was Unreasonable and Preventable**

23.    The type of attack that occurred here—social engineering to gain access to a CRM system—is a well-known threat in the insurance and financial industries. Defendant was on notice of the risk, as industry reports in June 2025 warned of

---

[24]    FTC Consumer Advice (Sept. 2024), supra n.19.
[25]    SSA (Oct. 2024), supra n.7.
[26]    GAO (June 2007), supra n.8.
[27]    NPR, "Victims of Social Security Number Theft Find It's Hard to Bounce Back" (Feb. 9, 2015) (report citing the Identity Theft Resource Center).

Salesforce customers being targeted with such schemes.[28]  Multiple companies reported breaches involving third-party CRM systems in that period.

24.    Reasonable safeguards—such as multi-factor authentication for CRM access, restricted bulk-data export capabilities, employee phishing-resistance training, encryption of stored data, and network segmentation—could have significantly reduced or eliminated the risk of such a compromise. Defendant's failure to employ these safeguards and to follow FTC-recommended practices directly contributed to the Data Breach and its impact.

**H.    Continuing Risk and Need for Relief**

25.    Defendant continues to possess Plaintiff's and Class Members' Private Information. Without significant improvements to its data security systems and practices, that information remains vulnerable to further breaches. Plaintiff and Class Members have a strong interest in ensuring that Defendant implements adequate safeguards, undergoes regular third-party security audits, and provides lifetime identity theft protection to all victims of the Data Breach.

<u>**CLASS ALLEGATIONS**</u>

26.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following classes:

---

[28]    BleepingComputer (July 30, 2025), supra n.3.

Nationwide Class:

All individuals in the United States whose Private Information was compromised in the July 2025 Data Breach at Allianz Life Insurance Company of North America.

California Subclass:

All individuals residing in California whose Private Information was compromised in the July 2025 Data Breach at Allianz Life Insurance Company of North America.

Excluded from the Nationwide Class and California Subclass are: officers and directors of Defendant; the judges assigned to this matter and their staff; and any immediate family members of such judges.

27.     The members of the Nationwide Class and California Subclass are so numerous that joinder of all members is impracticable. Defendant's own statements and regulatory filings confirm that the Breach affected the majority of its 1.4 million U.S. customers, in addition to financial professionals and employees whose data was stored in the compromised CRM system.[29]  The precise number and identities of Class Members can be determined from Defendant's records and the records of its third-party service providers.

---

[29]     USA TODAY (July 28, 2025), supra n.2.

28.     Questions of law and fact common to the Nationwide Class and California Subclass predominate over questions affecting only individual members. These common questions include, but are not limited to:

(a) whether Defendant failed to adequately safeguard Plaintiff's and Class Members' Private Information;

(b) whether Defendant owed a duty to Plaintiff and Class Members to protect their Private Information;

(c) whether Defendant breached that duty by failing to take reasonable measures to secure the Private Information;

(d) whether Defendant failed to timely notify Plaintiff and Class Members of the Data Breach;

(e) whether Defendant's conduct constituted negligence or negligence per se;

(f) whether Defendant's conduct breached implied contracts with Plaintiff and Class Members;

(g) whether Defendant was unjustly enriched by retaining the benefits conferred by Plaintiff and Class Members without providing adequate data security;

(h) whether Plaintiff and Class Members are entitled to damages and the proper measure of such damages; and

(i) whether Plaintiff and Class Members are entitled to injunctive and declaratory relief.

29.     Plaintiff's claims are typical of the claims of other Class Members in both the Nationwide Class and California Subclass, as all were subject to the same conduct by

Defendant, all had their Private Information compromised in the same Data Breach, and all suffered similar injuries as a result.

30.    Plaintiff will fairly and adequately represent the interests of both the Nationwide Class and the California Subclass. Plaintiff has no interests antagonistic to either Class and has retained counsel experienced in complex class actions, data breach litigation, and consumer protection matters who will vigorously prosecute this action.

31.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The injuries sustained by individual Class Members are relatively small compared to the burden and expense of individual litigation, making it impracticable for them to seek redress individually. Class treatment will allow those similarly situated to prosecute their claims in a single proceeding, avoid inconsistent judgments, and promote judicial efficiency.

32.    Defendant has acted or refused to act on grounds generally applicable to both the Nationwide Class and California Subclass, making final injunctive and declaratory relief appropriate with respect to both Classes as a whole. Such relief is necessary to ensure Defendant implements and maintains adequate security measures to protect the Private Information it continues to store, and to prevent further harm to Plaintiff and Class Members.

## COUNT I

## NEGLIGENCE

### (On Behalf of Plaintiff and the Nationwide Class)

33.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

34.     Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in collecting, storing, safeguarding, and protecting their Private Information from unauthorized access, disclosure, and use. This duty arose from, among other things: the special relationship between Defendant and its customers; Defendant's express and implied promises to protect the data; the nature of the data collected; statutory obligations, including those imposed by Section 5 of the FTC Act; and recognized industry standards.

35.     Defendant breached its duty by failing to implement reasonable data security measures to protect the Private Information, including, but not limited to:

(a) failing to encrypt sensitive information;

(b) storing unencrypted data in an Internet-accessible environment;

(c) failing to implement multi-factor authentication for CRM access;

(d) failing to adequately train employees to recognize and resist social engineering attacks;

(e) failing to segment networks to limit access to sensitive data;

(f) failing to detect and stop the breach in a timely manner; and

(g) failing to provide prompt and adequate notice to affected individuals.

14

36.     Defendant's acts and omissions were the direct and proximate cause of the Data Breach and the resulting harm to Plaintiff and Class Members, including the theft and loss of their Private Information, loss of control over such information, heightened risk of identity theft, and the various forms of economic and non-economic damages described above.

37.     As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer actual damages, are entitled to compensatory and nominal damages, and seek injunctive relief requiring Defendant to implement and maintain reasonable security procedures to protect their Private Information.

## COUNT II

## BREACH OF IMPLIED CONTRACT

### (On Behalf of Plaintiff and the Nationwide Class)

38.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

39.     In connection with obtaining services from Defendant, Plaintiff and Class Members provided their Private Information to Defendant with the mutual understanding and intent that Defendant would use reasonable measures to protect that information, safeguard it from unauthorized access, and provide prompt and adequate notice of any breach.

40.     Defendant accepted possession of Plaintiff's and Class Members' Private Information and, in so doing, entered into implied contracts whereby Defendant agreed to:

(a) use such information for business purposes only;

(b) safeguard the information with reasonable data security measures;

(c) prevent unauthorized disclosure of the information; and

(d) notify Plaintiff and Class Members promptly in the event of a data breach.

41.     Plaintiff and Class Members fully performed their obligations under the implied contracts by providing their Private Information and paying for Defendant's services, directly or indirectly.

42.     Defendant breached the implied contracts by failing to safeguard and protect the Private Information, by allowing unauthorized access to it, and by failing to timely notify Plaintiff and Class Members of the Breach.

43.     As a direct and proximate result of Defendant's breach, Plaintiff and Class Members suffered damages as alleged herein, including the costs of mitigating potential identity theft, loss of privacy, and diminution in the value of their Private Information.

## COUNT III – UNJUST ENRICHMENT

### (On Behalf of Plaintiff and the Nationwide Class)

44.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

45.     Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of payment for services, a portion of which was intended to fund reasonable

data security measures to protect their Private Information. Plaintiff and Class Members also conferred a benefit by providing their Private Information, which Defendant uses in the course of its business operations.

46.    Defendant appreciated and retained the benefits conferred by Plaintiff and Class Members but failed to provide the reasonable data security they paid for and expected. Instead, Defendant used inadequate security measures, thereby retaining the benefit without providing commensurate value.

47.    It is unjust for Defendant to retain these benefits without compensating Plaintiff and Class Members for the harm resulting from the Data Breach. Plaintiff and Class Members seek restitution, disgorgement, and all other remedies allowed by law.

**COUNT IV**

**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT (CCPA)**

**(Cal. Civ. Code §§ 1798.100, et seq.)**

**(On Behalf of Plaintiff and the California Subclass)**

48.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

49.    At all relevant times, Defendant was a "business" as defined in Cal. Civ. Code § 1798.140(c), and Plaintiff and California Subclass Members were "consumers" as defined in Cal. Civ. Code § 1798.140(g). The Private Information Defendant collected and stored constitutes "personal information" as defined in Cal. Civ. Code § 1798.81.5, including but not limited to names, addresses, dates of birth, Social Security numbers,

driver's license numbers, insurance policy information, and, in some cases, medical or health-related information.

50.     The CCPA, Cal. Civ. Code § 1798.150(a), provides a private right of action for any consumer whose nonencrypted or nonredacted personal information is subject to unauthorized access and exfiltration, theft, or disclosure as a result of a business's violation of its duty to implement and maintain reasonable security procedures and practices.

51.     Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information to protect it from unauthorized access, exfiltration, and disclosure, in violation of Cal. Civ. Code § 1798.150(a).

52.     As a direct and proximate result of Defendant's violations of the CCPA, the personal information of Plaintiff and California Subclass Members was compromised in the Data Breach.

53.     Pursuant to Cal. Civ. Code § 1798.150(a), Plaintiff and California Subclass Members seek statutory damages of not less than $100 and not greater than $750 per consumer per incident, or actual damages, whichever is greater, as well as injunctive or declaratory relief to ensure Defendant implements and maintains reasonable security procedures to protect the personal information of California consumers.

## COUNT V

## VIOLATION OF THE CALIFORNIA CONFIDENTIALITY
## OF MEDICAL INFORMATION ACT (CMIA)

### (Cal. Civ. Code §§ 56, et seq.)

### (On Behalf of Plaintiff and the California Subclass)

54.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

55.    At all relevant times, Defendant was a "provider of health care," "health care service plan," or "contractor" within the meaning of Cal. Civ. Code § 56.05, in that it collected, maintained, and used "medical information" as defined by Cal. Civ. Code § 56.05(j) in connection with the provision of insurance benefits and related services.

56.    Defendant collected and maintained medical information and health-related data of Plaintiff and California Subclass Members, including but not limited to information about insurance policies, health conditions, and other information derived from health-related insurance transactions.

57.    Pursuant to Cal. Civ. Code § 56.101(a), every provider of health care, health care service plan, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information must do so in a manner that preserves the confidentiality of the information.

58.    Defendant negligently created, maintained, and stored the medical information of Plaintiff and California Subclass Members in a manner that failed to

preserve its confidentiality, including storing it in an unencrypted, Internet-accessible environment vulnerable to social engineering attacks.

59.     As a result of Defendant's negligence, the medical information of Plaintiff and California Subclass Members was accessed, exfiltrated, and disclosed to unauthorized third parties during the Data Breach, in violation of Cal. Civ. Code § 56.101(a).

60.     Pursuant to Cal. Civ. Code § 56.36(b)(1), Plaintiff and California Subclass Members seek nominal damages of $1,000 per person, actual damages, and such other relief as the Court deems proper.

## COUNT VI

## VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT (CRA)

### (Cal. Civ. Code §§ 1798.80, et seq.)

### (On Behalf of Plaintiff and the California Subclass)

61.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

62.     At all relevant times, Defendant was a "business" that owns or licenses computerized data that includes personal information, as defined by Cal. Civ. Code § 1798.81.5(d)(1). The Private Information at issue here includes "personal information" as defined in Cal. Civ. Code § 1798.80(e), such as names in combination with Social Security numbers, driver's license or identification card numbers, medical information, and insurance policy numbers.

20

63.     The California Customer Records Act requires businesses to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect it from unauthorized access, destruction, use, modification, or disclosure. Cal. Civ. Code § 1798.81.5(b).

64.     Defendant failed to implement and maintain such reasonable security procedures and practices. As a result of Defendant's violation of § 1798.81.5, Plaintiff's and California Subclass Members' personal information was accessed and exfiltrated by unauthorized persons in the Data Breach.

65.     The CRA also requires that any business that maintains personal information that has been subject to a security breach must disclose the breach in the most expedient time possible and without unreasonable delay. Cal. Civ. Code § 1798.82(a). Defendant failed to disclose the Breach to Plaintiff and California Subclass Members without unreasonable delay, waiting more than a week after discovery to make a public disclosure and nearly two weeks to begin individual notifications.

66.     As a direct and proximate result of Defendant's violations of the CRA, Plaintiff and California Subclass Members have suffered damages as alleged herein and seek all remedies available under Cal. Civ. Code §§ 1798.84(b), including compensatory damages, injunctive relief, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide Class and California Subclass, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

21

A.      Certifying this action as a class action pursuant to Fed. R. Civ. P. 23, appointing Plaintiff as class representative for the Nationwide Class and California Subclass, and appointing Plaintiff's counsel as Class Counsel;

B.      Awarding statutory damages to Plaintiff and California Subclass Members under the CCPA, CMIA, and CRA, as well as compensatory, nominal, and consequential damages to Plaintiff and all Class Members as allowed by law;

C.      Awarding restitution and disgorgement of all amounts by which Defendant was unjustly enriched as a result of its wrongful conduct;

D.      Awarding injunctive and declaratory relief, including but not limited to an order requiring Defendant to:

E.      Implement and maintain reasonable security measures to protect Class Members' Private Information;

F.      Submit to regular, independent third-party security audits;

G.      Provide lifetime identity theft protection and credit monitoring for all Class Members;

H.      Comply with all applicable statutory and regulatory data security requirements; and

I.      Delete or destroy Private Information that Defendant has no reasonable business purpose to retain;

J.      Awarding Plaintiff and Class Members reasonable attorneys' fees, costs, and litigation expenses as allowed by law;

K.    Awarding pre- and post-judgment interest at the maximum rate permitted by law; and

L.    Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all claims so triable.

Dated:  August 19, 2025                Respectfully submitted,

*/s/ Daniel E. Gustafson*

Daniel E. Gustafson (#202241)
Shashi K. Gowda (#401809)
Frances Mahoney-Mosedale (#402741)
GUSTAFSON GLUEK PLLC
120 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
sgowda@gustafsongluek.com
fmahoneymosedale@gustafsongluek.com

James F. Clapp (145814)*
jclapp@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, CA 92011
Tel: (760) 209-6565

Edward J. Wynne (165819)*
ewynne@wynnelawfirm.com
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Tel: (415) 461-6400

Attorneys for the Plaintiff and the Proposed Class

*pro hac vice* forthcoming